1

2

3

4

5

6

7                                    IN THE UNITED STATES DISTRICT COURT

8                                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                                              SAN JOSE DIVISION

10   CENTURY 21 REAL ESTATE LLC,                    CASE NO. 5:13-cv-00887 EJD

11                                                  **ORDER GRANTING PLAINTIFF'S**
                        Plaintiff(s),               **MOTION FOR PARTIAL SUMMARY**
12        v.                                        **JUDGMENT**

13   ED/VAR INC., et. al.,
                                                    [Docket Item No(s). 46]
14
                        Defendant(s).
15   _____/

16        Presently before the court is a Motion for Partial Summary Judgment filed by Plaintiff

17   Century 21 Real Estate LLC ("Plaintiff").  See Docket Item No. 46.  Defendants Ed/Var Inc.

18   ("Ed/Var"), Carlos Vargas ("Vargas"), and Eriberto Fernandez ("Fernandez")[1] failed to file

19   opposition to the motion.  After a careful review of the relevant pleadings, the court has determined

20   that Plaintiff is entitled to summary judgment on its contractual breach and trademark claims.

21   Accordingly, the unopposed Motion for Partial Summary Judgment will be granted for the reasons

22   explained below.

23                                        **I.    BACKGROUND**

24        Plaintiff is a well-known real estate brokerage franchisor and has developed an expansive

25   franchise system that utilizes and relies on a family of trade and service marks unique to Plaintiff's

26   brand (hereafter the "Century 21® Marks").  See Decl. of Marc Fischman ("Fischman Decl."),

27

28        [1] Ed/Var, Vargas and Fernandez will be referred to collectively as "Defendants."

                                                    1

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  Docket Item No. 42, at ¶¶ 3-4.  The marks are each registered on the Principal Register of the United

2  States Patent and Trademark Office.[2]  Plaintiff uses the Century 21® Marks on goods, in

3  advertisements, and in educational and other training materials, as well as in newsletters and global

4  computer networks as part of its franchising plan.  Id. at ¶ 6.

5      This case involves a franchise brokerage located in Salinas, California.  Id. at ¶ 7.  Vargas

6  and Fernandez, each in their capacity as a 50% owner of Ed/Var, signed a Franchise Agreement with

7  Plaintiff with an effective date of September 4, 2000.  Id.; see also Decl. of Jacqueline Bertet

8  ("Bertet Decl."), Docket Item No. 46, at ¶ 4, Ex. A.  Under the terms of the Franchise Agreement,

9  Ed/Var agreed to pay monthly royalty fees amounting to 6% of its gross revenues or a minimum of

10  $500 per month, and advertising fees of 2% of its gross revenues or a minimum of $289 per month.

11  See Bertet Decl., at ¶ 6.  The terms of the agreement also required Ed/Var to send to Plaintiff a

12  report of each brokerage transaction in which a royalty fee will be payable within seven days of the

13  execution of initial documents.  Id. at Ex. A, § 11(B)(i)(c).  Plaintiff was provided the right to

14  terminate the contract in the event Ed/Var defaulted on any payments or any other obligation

15  required under the Franchise Agreement.  Id. at ¶ 7.  In the event of termination, Ed/Var was

16  obligated to "[i]mmediately and permanently discontinue" the use of the Century 21® Marks.  Id. at

17  Ex. A; see also Fischman Decl., at ¶ 12.

18      In conjunction with the Franchise Agreement, Vargas also executed a personal guaranty for

19  all of Ed/Var's obligations, which included a payment guaranty of the royalty and advertising fees

20  described above (hereafter, the "Guaranty").  Id. at ¶ 5, Ex. B.

21      After signing the Franchise Agreement, Defendants failed to pay the royalty and advertising

22  fees as required, and failed to properly report on royalty-bearing transactions.  Id. at ¶ 9; see also

23  Decl. of Aaron Rudin ("Rudin Decl."), Docket Item No. 46, at Ex. B.  This default resulted in the

24  issuance of three notices to Defendants on April 23, 2012, June 13, 2012, and November 29, 2012,

25  in which Plaintiff notified Defendants of their default under the Franchise Agreement and allowed

26  them a specified period of time to cure.  See Bertet Decl., at ¶¶ 11-13, Exs. D-F.

27  _____

28      [2] Relevant here are United States Trademark Nos. 1063488 (Century 21® word mark),
1085040, 2027670, and 1263774 (all Century 21® design marks).

2

United States District Court

For the Northern District of California

1    Defendants failed to cure the defaults after receiving the notices from Plaintiff.  Id. at ¶ 14;

2  see also Rudin Decl., at Ex B.  As a result, on January 4, 2013, Plaintiff sent Defendants a notice

3  terminating the Franchise Agreement as of January 9, 2013.  See Bertet Decl., ¶ 14, Ex. G.  The

4  notice also demanded all past due royalty and advertising fees by January 18, 2013, and notified

5  Defendants to immediately cease the use of all Century 21® Marks.  Id.

6    Defendants have not paid to Plaintiff any of the outstanding fees owed pursuant to the now-

7  terminated Franchise Agreement.  Id. at ¶ 16; see also Rudin Decl., at ¶ 4, Ex. B.  Nor did

8  Defendants cease further use of the Century 21® Marks after January 9, 2013.  See Fischman Decl.,

9  at ¶¶ 14-15; Ex. B; see also Rudin Decl., at ¶ 4, Ex. B.  They continued to use the marks until at least

10  February 13, 2013.  See Fischman Decl., at ¶ 14.

11    Plaintiff initiated this action on February 23, 2013.  See Compl., Docket Item No. 1.  This

12  motion followed.

13    **II.    LEGAL STANDARD**

14    A motion for summary judgment or partial summary judgment should be granted if "there is

15  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

16  Fed. R. Civ. P. 56(a);  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The

17  moving party bears the initial burden of informing the court of the basis for the motion and

18  identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or

19  affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett,

20  477 U.S. 317, 323 (1986).

21    If the moving party meets this initial burden, the burden then shifts to the non-moving party

22  to go beyond the pleadings and designate specific materials in the record to show that there is a

23  genuinely disputed fact.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The court must draw all

24  reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita

25  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

26    However, the mere suggestion that facts are in controversy, as well as conclusory or

27  speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.

28  See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead, the non-moving

1   party must come forward with admissible evidence to satisfy the burden.  Fed. R. Civ. P. 56(c); see

2   Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

3       A genuine issue for trial exists if the non-moving party presents evidence from which a

4   reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

5   material issue in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986);

6   Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991).  Conversely, summary judgment must

7   be granted where a party "fails to make a showing sufficient to establish the existence of an element

8   essential to that party's case, on which that party will bear the burden of proof at trial."  Celotex, 477

9   U.S. at 322.

10                          **III.   DISCUSSION**

11      Plaintiff moves for partial summary judgment on two categories of claims: (1) contract-based

12  claims, including the eighth claim for breach of contract as asserted against Ed/Var and the ninth

13  claim for breach of guaranty as asserted against Vargas, and (2) trademark-related claims, including

14  the first and fifth claims for trademark infringement and the seventh claim for unfair competition as

15  asserted against Ed/Var and Vargas.  These are discussed below.

16      **A.      Claims Eight and Nine: Contract-Based Claims**

17      Plaintiff argues the undisputed material facts support its claims for breach of the Franchise

18  Agreement and breach of the related Guaranty.

19              **1.      Choice of Law**

20      As an initial matter, the court must clarify the law that governs these claims.  Although all

21  Defendants are California-based, Plaintiff seeks to apply New Jersey state law because the Franchise

22  Agreement contains a provision designating that it "shall be construed according to the laws of the

23  State of New Jersey."  See Bertet Decl., at Ex. A, § 25.  Under these circumstances, Plaintiff is

24  correct.

25      "In a federal question action where the federal court is exercising supplemental jurisdiction

26  over state claims, the federal court applies the choice-of-law rules of the forum state."  Paracor Fin.,

27  Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996).  Thus, in California, "a

28  freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen

**United States District Court**
For the Northern District of California

4

United States District Court

For the Northern District of California

1    state has a substantial relationship to the parties or the transaction or any other reasonable basis

2    exists for the parties' choice of law.'" <u>1-800-Got Junk? LLC v. Super. Ct.</u>, 189 Cal. App. 4th 500,

3    513-14 (2010) (quoting <u>Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.</u>, 134 Cal. App. 4th

4    1302, 1308 (2005)).

5          Here, there is no doubt that New Jersey has a substantial relationship to at least one party

6    because Plaintiff maintains its principal place of business in the state. <u>See Nedlloyd Lines B.V. v.</u>

7    <u>Super. Ct.</u>, 3 Cal. 4th 459, 467 (1992). And, this substantial relationship notwithstanding, Plaintiff's

8    connection to New Jersey would provide a reasonable basis for the selection of that state's laws in

9    any event. <u>Id.</u> at 467-68; <u>see also Consul, Ltd. v. Solide Enters., Inc.</u>, 802 F.2d 1143, 1147 (9th Cir.

10   1986) ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their

11   choice."). Thus, the breach of contract claim and breach of guaranty claims will be construed under

12   New Jersey law.

13                **2.        Breach of Contract**

14         Under New Jersey law, a claim for breach of contract requires proof of the following

15   elements: "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4)

16   plaintiff performed its own contractual duties." <u>Nat'l Reprographics, Inc. v. Strom</u>, 621 F. Supp. 2d

17   204, 222 (D.N.J. 2008).

18         Plaintiff easily establishes these elements with admissible evidence. The contract at issue is

19   the Franchise Agreement, which, on the one hand, obligated Ed/Var to pay royalties and advertising

20   fees to Plaintiff, and on the other hand, granted Ed/Var a non-exclusive license to use Plaintiff's

21   marks and system. <u>See</u> Bertet Decl., at Ex. A, §§ 8, 9. The Franchise Agreement also obligated

22   Ed/Var to report to Plaintiff all brokerage transactions in which a royalty fee was payable. <u>Id.</u> at Ex.

23   A, § 11(B)(iii). Ed/Var breached the Franchise Agreement by failing to pay the franchise and

24   advertising fees, and failing to properly report royalty-bearing transactions according to the

25   Agreement's terms. <u>Id.</u> at § 9.[3]

26   _____

27        [3] Vargas admitted to a breach of both the Franchise Agreement and Guaranty by failing to
     respond to a Request for Admissions. Fed. R. Civ. P. 36(a)(3); Rudin Decl., at Ex. B. "Unanswered
28   requests for admissions may be relied on as the basis for granting summary judgment." <u>Conlon v.</u>
     <u>United States</u>, 474 F.3d 616, 621 (9th Cir. 2007) (citing <u>O'Campo v. Hardisty</u>, 262 F.2d 621, 624

1    Plaintiff performed the duties it owed pursuant to the Franchise Agreement.  It is undisputed

2  that Plaintiff satisfied its obligation to provide Ed/Var use of the Century 21® Marks and system for

3  the duration of the contract.  In addition, Plaintiff terminated the Franchise Agreement in a manner

4  consistent with its terms by issuing three notices of default and opportunities to cure before issuing a

5  final notice of termination on January 4, 2013.  Id. at § 11-15; Exs. D-G.

6    As a result of Ed/Var's breach, Plaintiff has been damaged in the total amount of

7  $177,399.30, which includes unpaid royalties of $141,144.63, audit interest of $27,441.85,

8  advertising fees of $12,107.60, franchise fees of $625.00, and a credit of $3,919.78 for previously

9  billed minimum royalty fees.[4]

10    Since it has established all of the necessary elements with admissible evidence and since

11  Defendants did not produce evidence to the contrary, Plaintiff is entitled to summary judgment on its

12  claim for breach of contract against Ed/Var.  Cristobal v. Siegel, 26 F.3d 1488, 1491 (9th Cir. 1994)

13  (holding the court can grant an unopposed motion for summary judgment if "the moving party bears

14  its burden of showing its entitlement to judgment.").

### 3.    Breach of Guaranty

16    In New Jersey, "[t]o be entitled to a judgment on a guaranty, a plaintiff must show: '(1)

17  execution of the guarantee by the guarantor (i.e. that it was the defendant who signed the guarantee);

18  (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in

19  extending monies to the borrower; (4) default by principal obligator; (5) written demand for

20  payment on the guarantee; (6) failure of the guarantor to pay upon written demand."  Ramada

21  Worldwide, Inc. v. Southport, LLC, No. 11-cv-03676 (DMC)(JAD), 2013 U.S. Dist. LEXIS 91719,

22  at *16, 2013 WL 3286115 (D.N.J. June 27, 2013) (quoting United States on behalf of Small Bus.

23  Admin. v. DelGuercio, 818 F. Supp. 725, 727-28 (D.N.J. 1993).

24    Plaintiff has established these elements with admissible evidence.  First, the fact that Vargas

26  (9th Cir. 1958)).

27    [4] Since the Franchise Agreement provides for an award of attorneys fees and costs to a prevailing party in litigation, Plaintiff may make application for such fees through a separate motion.
28  See N. Bergen Rex Transp. Inc. v. Trailer Leasing Co., 158 N.J. 561, 569-70 (1999) (recognizing that, under New Jersey law, "a party may agree by contract to pay attorneys' fees.").

CASE NO. 5:13-cv-00887 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

executed the Guaranty is undisputed.  See Bertet Decl., at Ex. B.  Second, the terms of the Guaranty and the obligations created thereby are unambiguous: Vargas was required to guaranty "the prompt payment and performance when due of all obligations" of Ed/Var created by the Franchise Agreement, including "all franchise royalty or service fees, NAF [advertising] contributions . . . attorneys fees . . . and other such charges, fees and assessments provided for" by the agreement.  Id.  Third, by its own terms, the express purpose of the Guaranty was to induce Plaintiff to accept Ed/Var as a franchisee.  Id.  For that reason, reliance has been properly demonstrated.

As to the fourth element, it is undisputed that Ed/Var defaulted under the terms of the Franchise Agreement by failing to timely pay fees.  Fifth, Plaintiff has demonstrated that it notified Vargas of Ed/Var's default and of Plaintiff's intention to terminate the Franchise Agreement if the default was not cured.  Id. at Exs. D-F.  Vargas also admitted to receiving notice of the amounts owed.  See Rudin Decl., at Ex. B.  Finally, despite these written demands for payment, Vargas did not remit payment of the outstanding fees.  See Bertet Decl., at ¶¶ 15-16.

Because Plaintiff has produced sufficient evidence and because there is no issue of material fact as to the claim for breach of guaranty, the motion for summary judgment will be granted as to this cause of action.  Cristobal, 26 F.3d at 1491.

**B.    Claims One, Five and Seven: Trademark-Related Claims**

Plaintiff argues the undisputed material facts also support its claims for statutory trademark infringement, common law trademark infringement, and common law unfair competition.

**1.    Trademark Infringement**

To prevail on its statutory trademark infringement claim under 15 U.S.C. § 1114, Plaintiff "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."  Dep't of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006).  A satisfactory showing on the federal trademark infringement claim will also establish claims for common law trademark infringement and common law unfair competition under both California and New Jersey law.  See Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1221 (9th Cir. 2012) (holding that California state-law claims for trademark infringement and unfair competition are "subject to the same legal standards" as a

CASE NO. 5:13-cv-00887 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Lanham Act trademark claim); J & J Snack Foods Corp. v. Earthgrains Co., 220 F. Supp. 2d 358,

2   374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act

3   are the same as the elements for a claim of unfair competition under the Lanham Act and for claims

4   of trademark infringement and unfair competition under New Jersey statutory and common law.").

5       Plaintiff has established the elements of a trademark infringement claim with admissible

6   evidence.  As to the first element, the fact that Plaintiff has registered the Century 21® marks

7   constitutes prima facie evidence of their validity and of Plaintiff's ownership interest in the marks.

8   See Fishman Decl., at ¶¶ 4-6, Ex. A; 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a).

9       As to the second element, the undisputed fact that Ed/Var and Vargas continued to use the

10  Century 21® marks after Plaintiff terminated the franchise agreement as a "holdover" franchisee is

11  dispositive of the issue.  S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992)

12  (holding that a franchisee's post-termination "holdover" use of the franchisor's trademarks "amounts

13  to infringement under the Lanham Act."); Burger King Corp. v. Majeed, 805 F. Supp. 994,

14  1002-1003 (S.D. Fla. 1992) (recognizing the "well-settled" doctrine that "a terminated franchisee's

15  continued use of its former franchisor's trademarks, by its very nature, constitutes trademark

16  infringement.").  It is also true that Plaintiff met has its burden on the second infringement element

17  under the test traditionally applied to this issue.

18      The Ninth Circuit has articulated eight factors relevant to determining a likelihood of

19  confusion, often referred to as the "Sleekcraft" factors: strength of the mark, proximity of the goods,

20  similarity of the marks, evidence of actual confusion, marketing channels used, type of goods and

21  the degree of care likely to be used by the purchaser, defendant's intent in selecting the mark and

22  likelihood of expansion of the product lines.  AMF v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th

23  Cir. 1979).  "The Sleekcraft factors are not a scorecard, a bean-counter, or a checklist."  Fortune

24  Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., 618 F.3d 1025, 1031 (9th Cir. 2010).

25  "Some factors are much more important than others, and the relative importance of each individual

26  factor will be case-specific."  Brookfield Communs., Inc. v. West Coast Entm't Corp., 174 F.3d

27  1036, 1054 (9th Cir. 1999).

28      Applying Sleekcraft here, the Century 21® marks are indisputably strong and have been

United States District Court
For the Northern District of California

8

United States District Court
For the Northern District of California

1    previously recognized as such.  See Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179

2    (9th Cir. 1988).  The marks at issue are identical since Ed/Var and Vargas carried on the use the

3    same Century 21® marks after the Franchise Agreement was terminated.  See Bertet Decl., at ¶ 15,

4    Ex. G; Fishman Decl., at ¶¶ 14-15, Ex. B; Rudin Decl., at ¶¶ 2-3, Ex. A.  The same is true of the

5    marketing channels used and the types of goods associated with Plaintiff, on the one hand, and

6    Ed/Var and Vargas, on the other, since all parties were providing real estate brokerage services

7    using the same external signage and utilized internet websites to display their services.  See Fishman

8    Decl., at ¶¶ 14-15, Ex. B.; Rudin Decl., at ¶¶ 2-3, Exs. A, B.  In addition, it is reasonable to infer that

9    Ed/Var and Vargas intended to capitalize on the Century 21® marks through impermissible use.

10   Entrepreneur Media v. Smith, 279 F.3d 1135, 1148 (9th Cir. 2002) ("Where an alleged infringer

11   chooses a mark he knows to be similar to another, one can infer an intent to confuse.").  All of these

12   factors weigh in favor of finding the potential for consumer confusion.

13        Since Plaintiff has met its burden to show trademark infringement, the motion for summary

14   judgment will be granted as to the first, fifth and seventh related causes of action.  Cristobal, 26 F.3d

15   at 1491.

16            **2.    Remedies**

17        Plaintiff requests a damages award of $2,367.00 for the trademark-related claims, which

18   amounts to three times the total amount of royalty and advertising fees owed by Ed/Var and Vargas

19   for a one month period of unauthorized use between January and February, 2013.  See Bertet Decl.,

20   at ¶¶ 8-9.  As detailed above, it is undisputed that Defendants continued to use the Century 21®

21   Marks during that time, even though they had been notified of the termination of the Franchise

22   Agreement.  The trebled amount of damages is appropriate under the circumstances as there are no

23   extenuating circumstances to find otherwise.  15 U.S.C. § 1117(b); Nintendo of Am. v. Dragon Pac.

24   Int'l, 40 F.3d 1007, 1010 (9th Cir. 1994).

25        Plaintiff also requests a permanent injunction under 15 U.S.C. § 1116(a) essentially

26   enjoining Ed/Var and Vargas from using the Century 21® marks or holding themselves out as one of

27   Plaintiff's franchisees or otherwise affiliated with Plaintiff.  The court applies "traditional equitable

28

CASE NO. 5:13-cv-00887 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  principles" in deciding whether to grant this request.[5]  <u>Reno Air Racing Ass'n v. McCord</u>, 452 F.3d

2  1126, 1137 (9th Cir. 2006).

3          Although Plaintiff presented little meaningful argument in support of the injunction, the

4  court will nonetheless grant the request since an examination of the applicable principles support it.

5  As discussed, Plaintiff has provided evidence of Ed/Var and Vargas' infringing activity, all of which

6  demonstrates an irreparable injury through the confusion caused by false affiliation, loss of

7  goodwill, and lack of control over the Century 21® marks.  Plaintiff has also established that its

8  legal remedies are inadequate, considering Ed/Var and Vargas agreed in the Franchise Agreement

9  that monetary damages would not compensate Plaintiff.  <u>See</u> Bertet Decl., at Ex. A, § 19(C).  Indeed,

10  damages cannot rectify the reputational damage that occurs from the unauthorized use of the marks.

11  The balance of hardships clearly tips in Plaintiff's favor on these facts since Ed/Var and Vargas have

12  no justifiable interest in impermissibly utilizing marks they do not own or have license to use.

13  Finally, the injunction is in the public interest because it would prevent any further consumer

14  confusion.

15                                      **IV.   ORDER**

16          Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment (Docket Item No.

17  46) is GRANTED.  A judgment consistent with this order in favor of Plaintiff and against Ed/Var

18  and Vargas shall issue.

19  //

20  //

21  //

22  //

23  //

24  //

25

26          [5] The "traditional equitable principles" require the applicant to demonstrate: "(1) that it has
27  suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are
   inadequate to compensate for that injury; (3) that, considering the balance of hardships between the
   plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be
28  disserved by a permanent injunction."  <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391
   (2006).

                                            10

**United States District Court**
For the Northern District of California

1    The court schedules this action for a Status Conference on **August 1, 2014, at 10:00 a.m.**

2    The parties shall file a Joint Status Conference Statement which provides, inter alia, an update on the

3    status of Plaintiff's anticipated application for attorneys fees and costs as well as the final resolution

4    of this action, on or before **July 25, 2014.**

5    **IT IS SO ORDERED.**

6    Dated:  July 10, 2014

7                                                                EDWARD J. DAVILA
                                                                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:13-cv-00887 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT